IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUSANNE PAINTER,

        Plaintiff,

vs.                                                                                           No. CIV 02-891 WDS

JO ANNE B. BARNHART, Commissioner
of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on June 7, 2004. [Docket # 16] Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits or supplemental security income. The Court, having considered Plaintiff's Motion and Memorandum Brief [docket # 17], Defendant's Response [docket # 19], Plaintiff's Reply [docket # 21], the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### I. Background

Plaintiff, who was born on November 2, 1952, worked as a secretary before the onset of her alleged disability. Plaintiff filed her initial concurrent application for disability insurance benefits ("DIB") under Title II of the Social Security Act on October 20, 1999. Tr. 59-62. Plaintiff alleged that she became unable to work as a result of her disabling conditions on September 1, 1999. Tr. 59.



After Plaintiff's application was denied at the initial level, Tr. 45, and at the reconsideration level, Tr. 46, Plaintiff appealed by filing a request for hearing by an administrative law judge ("ALJ") on August 25, 2000. Tr. 47.

The hearing before the ALJ was held on July 10, 2001, at which Plaintiff appeared and was represented by a non-attorney. Tr. 12. Plaintiff alleged that she was disabled primarily as a result of pain in her neck, shoulders, lower back and hips. Tr. 29-31, 33-34. Plaintiff was receiving physical therapy for residual pain in her right shoulder following surgery to relieve synovitis and impingement. Tr. 31. Plaintiff also complained of bronchitis and asthma. Tr. 35. In a decision dated October 4, 2001, the ALJ denied Plaintiff's claims for DIB. Tr. 9-18. Plaintiff then filed a request for review with the Appeals Council on November 19, 2001. Tr. 301. The Appeals Council denied Plaintiff's request for review on May 24, 2002, Tr. 6-7, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481

On July 25, 2002, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on June 16, 2004 (Docket #16)[1].

---

[1]This matter was remanded to the Commissioner on January 2, 2003 because Plaintiff's claim file could not be located. (Docket # 8, 10) The complaint was reopened on March 8, 2004 after Plaintiff's file was found. (Docket # 12, 13) Defendant filed its answer on March 22, 2004. (Docket #14)

2

## II. Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams*, 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams*, 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51.

3

At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

### III. Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 14. At step two the ALJ found that Plaintiff's allegations of bronchitis and asthma were not supported by medical evidence consisting of signs, symptoms and laboratory findings, and therefore were not considered as medically determinable impairments. Tr. 13. The ALJ found at step two that Plaintiff had a severe impairment arising from arthritis, multiple sites[2]. Tr. 14. However, the ALJ found at step three that Plaintiff's impairment was

---

[2] It appears from the ALJ's opinion that he used the term "arthritis, multiple sites" to refer to Plaintiff's hip, back, neck and shoulder complaints, collectively. It is far from clear, medically, that Plaintiff's right shoulder impingement or C5-C6 disc herniation were related to, or caused by, Plaintiff's arthritic condition. However, it is sufficient that the ALJ identified all of the above impairments as "serious" at step two of the analysis.

not severe enough to meet any of the Listings. Tr. 14. At step four, the ALJ concluded that Plaintiff retained the RFC to perform light work activities consisting of lifting 20 pounds occasionally and up to ten pounds frequently; and standing, sitting and/or walking for a normal day while avoiding prolonged overhead reaching and prolonged exposure to fumes, dust, and poor ventilation. Tr. 16.

Given this RFC assessment, the ALJ found that Plaintiff could perform her past relevant work as a secretary as generally performed in the national economy. Tr. 17. Given the step four finding, it was not necessary for the ALJ to proceed to step 5.

Plaintiff contends that the ALJ erred in failing to develop the record, made erroneous credibility findings, made an RFC finding that was not supported by substantial evidence, and failed to make the necessary findings regarding the duties of a secretary. (Plt. Br. p. 2)

## IV. Discussion

### 1. Did the ALJ Commit Error By Making Unfavorable Determinations of the Plaintiff's Credibility?

Plaintiff alleges that the ALJ committed error by finding Plaintiff's subjective complaints of pain and disability to be not fully credible. Plaintiff alleges that the ALJ's credibility finding was merely conclusory. (Plt Br. p. 13) Plaintiff also alleges that the ALJ assumed that Plaintiff's pain "must be disabling in and of itself, or it is irrelevant to the claim for benefits." (Plt Br. p. 13) Plaintiff characterizes the ALJ's approach as "all-or-nothing" reasoning that is disfavored by the Tenth Circuit. (Plt Br. p. 8).

Plaintiff's objections are not well taken. A two-part inquiry applies in assessing functional limitations that result from pain. First, the ALJ need not even consider the claimant's subjective pain testimony unless the claimant proves by objective medical evidence that he or she has an

impairment that could reasonably be expected to produce pain. *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)(citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)). Second, where a claimant has established by objective medical evidence that he has an impairment that could reasonably be expected to produce pain, the ALJ must consider all of the evidence to decide whether he believes the claimant's allegations about the functional limitations that result from the pain. *See* 20 C.F.R. §404.1529; *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Plaintiff's objection that the ALJ assumed that Ms. Painter's pain must be disabling in and of itself appears to relate to the first step of this process. However, the ALJ found in Plaintiff's favor at step one. At step two the ALJ did not take an "all-or-nothing" approach. He accepted Plaintiff's testimony to a certain extent, just not to the extent that Plaintiff would have preferred.

The court finds that the ALJ properly determined at step one of this process that Plaintiff had impairments that could reasonably be expected to produce pain: rheumatoid arthritis, a herniated cervical disk at C5-C6, and impingement in her right shoulder. Thus, the question is whether there is substantial evidence to support the ALJ's step two determination that Plaintiff's testimony about her functional limitations was not fully credible.

Plaintiff complained to the Commissioner of chronic, severe back pain such that she could not perform activities of daily living, suffered extreme pain going from her bed to the bathroom at night, and "felt like a butcher's knife [was] sticking in my lower back." Tr. 97. Plaintiff complained of shoulder and neck pain as well. Id. At her hearing, Plaintiff testified that she had lower back pain every day, Tr. 33, and that it felt like a butcher knife stabbing her in the back. Tr. 34. However, at the time of the hearing Plaintiff had limited complaints about her neck and shoulders. Plaintiff testified that her neck was not better, but that she had not had problems turning her neck and that she

had the range of motion to turn her neck, with limitations. Tr. 29-30. Plaintiff testified that she did not have a full range of motion in her shoulder, or full strength, but that she was in physical therapy and it was getting better. Tr. 31. She said she did not have a problem reaching, generally. Tr. 39. Following the decision by the ALJ, Plaintiff filed a Request For Review of Hearing Decision which stated: "Claimant's arthritis pains are so severe in nature, she cannot do the sitting required for sedentary work. Mr. Painter is required to take four different pain medications including codeine. Tr. 301.

The ALJ found that Plaintiff's own description of her physical activities was inconsistent with her descriptions of her physical capabilities. Tr. 16. Although Plaintiff testified that she did not have problems reaching, the ALJ credited the consultative orthopedist's opinion that Plaintiff be restricted from prolonged overhead reaching[3]. Id. The ALJ also found that Plaintiff's subjective complaints of pain were contradicted by the opinions of both the consultative orthopedist and Dr. Heskiaoff[4]. Id.

A close examination of Plaintiff's rather extensive medical records provides further support for the ALJ's credibility determination. Although Plaintiff complained to the Commissioner and the ALJ about disabling back pain like "a knife in the back", Plaintiff did not make such complaints to the doctors with whom she treated. Dr. Latteri's final diagnosis, for example, was degenerative cervical, cervicothoracic disc, tendinitis, shoulder strain/sprain, cervical strain and sprain. Tr. 115. The California Department of Rehabilitation found in September of 2000 that Plaintiff had

---

[3]Plaintiff's contention that the consultative orthopedist limited Plaintiff from any and all reaching is addressed below.

[4]Plaintiff's objections to the weight given by the ALJ to the findings of Dr. Heskiaoff are addressed below.

impairments consisting of bilateral hearing loss; degenerative disc C5-6, and chronic bilateral shoulder tendonitis. Tr. 118. In the fall of 1999 Plaintiff sought treatment for "Neck Pain" at Kaiser Permanente, but there was no reference to back pain or arthritis over several visits. Tr. 137, 139, 152. Although Plaintiff received cortisone injections for both her neck and shoulder, and underwent shoulder surgery, there is no evidence that she sought active treatment for her lower back, even though she claims that her symptomology there was more severe. The record is not devoid of references to Plaintiff's experiencing some lower back pain. Tr. 174, 192. But no findings in the record are consistent with the type of severe, stabbing pain described by Plaintiff in her disability application or her testimony before the ALJ[5].

The medical records cited above rebut Plaintiff's allegation that the ALJ's credibility assessment was flawed. To the contrary, the medical record in this case supports the ALJ's conclusion that Plaintiff's complaints of debilitating limitations, particularly her descriptions of knife-like pain in her lower back that made it impossible for her to move, were not consistent with the clinical evidence of record and were not wholly credible. Tr. 16. The Court finds that there is substantial evidence to support the ALJ's conclusion that Plaintiff's subjective complaints of pain and fatigue were not fully credible. It is, of course, fully within the discretion of the ALJ to accept all, part, or none of the testimony of a claimant:

> In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible. The

---

[5] In Section 3, below, there is additional discussion of the findings of Dr. Heskiaoff and the records from Covenant Health Care Center, which provide additional support for the ALJ's decision that Plaintiff's description of her pain, particularly her back pain, was only partially credible.

adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree.

- SSR-96-7p. Accordingly, the Court finds that Plaintiff's objections to the ALJ's credibility determination are not well taken.

### 2. Whether the ALJ Erred in Failing to Order Consultative Evaluations or in Developing the Record

Plaintiff alleges that the ALJ should have ordered consultative evaluations to clarify Plaintiff's "emotional problems" and to further investigate plaintiff's hearing deficiencies. The basis for the claim of emotional problems appears to be a comment by Ray Maxwell, who interviewed Plaintiff on behalf of the Commissioner. Mr. Maxwell wrote: "This woman has a nervous character--in a way, it seems surprising that she could have maintained the job she did 94-99--but there was no indication that Trans Ocean Carrier was subsidizing her in any way." Tr. 81. However, none of the numerous doctors who examined Plaintiff came to a similar conclusion. At least one doctor affirmatively mentioned that he found Plaintiff to be oriented and "psychologically intact." Tr. 237 Regarding Plaintiff's deafness, Plaintiff told the ALJ that she wears two hearing aids and reads lips. Tr. 40-41. There is no indication that Plaintiff had difficulty hearing the ALJ's questions. Plaintiff's disability application did not mention problems with hearing as a basis for her claim. Plaintiff testified that she stopped working due to pain in her shoulders, neck, back and hips. She gave no indication that her hearing problems threatened her employment.

The Commissioner has a broad latitude in ordering consultative exams. See *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec. of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). An ALJ should order a consultative examination when the record

establishes a reasonable possibility of disability, and the result of such an examination could be expected to assist in resolving the disability issue. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). Mere sensitivity about loss of ability to perform certain chores, however, does not even approach the level of a mental or emotional impairment as defined by SSA regulations. *Jones v Bowen*, 829 F.2d 524, 256 (5th Cir. 1987) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (citing 20 CFR Subpart P, App. 1, Listing 12.00)).

The court finds that the record in this case does not establish a reasonable possibility of a mental or emotional impairment that would have obliged the ALJ to order a psychological consultative examination. A passing comment by a Social Security interviewer is not the basis for a consultative examination. Further, although Plaintiff was undoubtedly under financial stress as a result of being out of work, there is no indication in the file that she experienced even a nominal degree of mental or emotional difficulty while she was employed.

Nor does the mere fact that Plaintiff uses a hearing aid and reads lips impose an obligation on the ALJ to request a consultative examination. An impairment of longstanding duration, which has not precluded the performance of gainful employment and which has not worsened in severity, cannot serve as a basis for a finding of disability. See *Smith v. Chater*, 959 F.Supp. 1142 (W.D.Mo. 1997) (when a claimant has worked with an impairment over a period of years, it cannot be considered currently disabling without a showing that a significant deterioration has occurred); *Dixon v. Sullivan*, 905 F.2d 237 (8th Cir. 1990); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992). Although Plaintiff might have some difficulty understanding some speakers, it is apparent from her testimony and her work history that she has made appropriate accommodations. Plaintiff did not offer testimony that her hearing problems had worsened.

10

Accordingly, failure to order a consultative examination in this area was not error.

The Plaintiff also alleges that the ALJ made a comment at the hearing that "discouraged the non-attorney representative from asking questions." (Plt. Br. p. 9) The Court finds that there is no evidence supporting this allegation. Taken as a whole, the record indicates that the ALJ was exceptionally cordial and non-confrontational in the manner in which he conducted the hearing. The Court has no doubt that the referenced comment was intended in a light-hearted way, and there is no evidence that it was taken any differently. The non-attorney representative did, in fact, ask questions.

The Plaintiff also alleges that, because the ALJ reviewed the record after the hearing, rather than before, the ALJ was unaware of Plaintiff's emotional problems and failed to ask Plaintiff about them. The Court has already determined that there was no obligation on the part of the ALJ to further develop the record regarding the alleged emotional problems, for which there was no credible evidence.

### 3. Whether the ALJ Erred in Evaluating Plaintiff's RFC at Step Four of the Sequential Analysis

Assessment of a claimant's physical and mental residual functional capacity is undertaken at step four of the sequential analysis. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). Plaintiff contends that the ALJ made several errors in evaluating Plaintiff's RFC. First, Plaintiff alleges that the ALJ ignored the finding in the orthopedic consultative evaluation that Ms. Painter had a restriction on her ability to reach in all directions, including overhead. [Plt Brf, p. 6] This is a mischaracterization of the doctor's findings. The doctor did check "Limited" at block C(1) on page 4 of the Physical Residual Function Capacity Assessment. Tr. 182. C(1) represents a manipulative limitation as to "Reaching all directions (including overhead). However, that limitation is modified

by the doctor's response to C(5), which asks the doctor to "Describe how the activities checked "limited" are impaired." The doctor responded by writing "prolonged overhead work." Plaintiff's suggestion that this is an additional limitation is not well taken. If the doctor's finding was that Plaintiff could not reach in any direction with her right arm, there would be no need to additionally specify that she could not reach overhead for a prolonged period of time. This interpretation is confirmed on page 8 of the Assessment (Tr. 186) where the following appears in Section IV:

> **MSS provided by examining physician:** No prolonged overhead activities with righ upper extremity, this statement is supported by overall evidence in file.
>
> **Conclusion**: Claimant has the ability to do light work activity; avoid overhead work with right upper.

The ALJ did not misinterpret or ignore a finding of the orthopedic consultative evaluation, and Plaintiff's objection on this ground is not well taken.

Plaintiff also argues that the ALJ improperly credited the medical findings of Dr. Heskiaoff in that he was not a treating physician, and that he was hired by the worker's compensation insurance company. (Plt Br p. 5) Plaintiff's objections are not well taken. First, although Plaintiff characterizes Dr. Latteri as a "treating physician", Dr. Latteri was treating Plaintiff for purposes of her worker's compensation claim. The reports prepared by Dr. Latteri and Dr. Heskiaoff both contained the Medical Legal Disclosure apparently required by California worker's compensation law. Tr. 196, 201, 213, 225. Plaintiff apparently reported to Dr. Heskiaoff that she was sent to Dr. Latteri by her attorney. Tr. 223. Accordingly, a report from either doctor could be viewed skeptically from the perspective of whether "self-interest may well have dictated its contents." Cullinane v. Secretary of Dep't of Health and Human Servs., 28 F.2d 137, 139 (2d Cir. 1984).

However, an analysis of Dr. Heskiaoff's findings does not lead to the conclusion that they

12

should have been ignored by the ALJ, or that there was error in any reliance placed upon them by the ALJ. First, Dr. Heskiaoff did not deny the existence of Plaintiff's cervical disc herniation, shoulder impingement, or arthritis-induced pain in the lumbar spine. He acknowledged the existence of an MRI that apparently showed shoulder impingement, but reported no clinical signs of impingement during his exam. Tr. 224. Similarly, he acknowledged an MRI of the cervical spine that indicated a small C5-6 disc herniation, Tr. 218, and reported complaints of tenderness by Plaintiff. Tr. 219. He also acknowledged a laboratory finding of rheumatoid arthritis, and reported complaints of "slight tenderness" from Plaintiff in the L5 region. Tr. 221. He also found pain in the right leg upon supine straight leg raising, and complaints of pain upon forward flexion. Tr. 221. In fact, Dr. Heskiaoff found Plaintiff to be symptomatic regarding her rheumatoid arthritis, but found those symptoms to be "intermittent slight." Tr. 225. The far more significant area of dispute between Dr. Heskiaoff and Dr. Latteri was the issue of causation, which is of no relevance in this matter.

The court notes, however, that Dr. Heskiaoff examined Plaintiff on April 26, 2000. Coincidentally, Plaintiff sprained her ankle two days later, April 28, 2000. She received emergency room care at Columbia Lea Regional Medical Center, Hobbs, New Mexico. Tr. 227-233. On May 2, 2000 she presented at Covenant Health Care Center, Hobbs, New Mexico for follow up care. Tr. 237-238. She was seen by Dr. Harold Fenner, who took her past medical history:

> PAST MEDICAL HISTORY: She is hard of hearing. She fell off a banister, unconscious, and injured the left shoulder years ago. It isn't bothering her too much at this time. As an adult, she has been told she has arthritis. She has had occasional episodes of bronchitis, asthma and arthritic change and discomfort in the neck, back, hips and legs.
>
> In the past, she has had injuries to her left and right shoulders but these aren't bothering her much at this point. She has seven children, all in good health.

13

Tr. 237.

Plaintiff's report to Dr. Fenner of "occasional" discomfort in the neck, back, hips and legs, combined with her report that her shoulders "aren't bothering her much" is consistent with the findings of Dr. Heskiaoff, which were made less than one week before. Both sets of records are consistent with other medical records in the file, as noted earlier in this opinion. Accordingly, the court finds that the ALJ was not required to disregard the report of Dr. Heskiaoff merely because he examined Plaintiff on behalf of a worker's compensation carrier, and it was not error for the ALJ to give Dr. Heskiaoff's findings some weight even if he was not a treating physician.

The Court also finds, for the reasons stated in Section 1 of this opinion, that the ALJ did not improperly assess the credibility of Plaintiff so as to cause an erroneous evaluation of Plaintiff's RFC. The ALJ considered, but properly discounted Plaintiff's allegations that she experienced severe, stabbing pain in her back as a result of the arthritis in her back. The ALJ acknowledged that Plaintiff's medical condition could cause her to experience mild to moderate pain or discomfort. Tr. 16. The Court agrees with the ALJ's conclusion that such pain or discomfort would not cause Plaintiff to be so severely impaired as to preclude all types of work activity. Tr. 16.

Finally, the Court finds that the ALJ did not improperly fail to consider the side effects of Plaintiff's medication. (Plt Br. p. 8) The ALJ is not required to address each and every piece of evidence contained within a claimant's file. Plaintiff was asked about side effects at the hearing before the ALJ. Tr. 43. She claimed that her memory has been compromised, but there is no medical testimony to support that allegation. She denied that the Codeine she took produced stomach irritation. Tr. 43. She did not answer her non-attorney representative's question regarding sleepiness. Tr. 43. The ALJ's failure to specifically address the side effects of medication in his

14

opinion is not a sufficient basis upon which to order a remand in this case.

### 4. Whether the ALJ's Failure to
### Discuss a Secretary's Duties Requires a Remand

Plaintiff argues that before making a finding that Ms. Painter can return to her previous occupation as a secretary, the ALJ must first make findings regarding the physical and mental demands of the work. (Plt. Br. p. 8) The Court agrees with Plaintiff that the ALJ did not describe the RFC that the job of secretary requires. He found only that Plaintiff could perform secretarial work "as generally performed in the national economy," Tr. 17, which does constitute a mere conclusion. Plaintiff has attached the DOT job descriptions for two general secretary positions: administrative secretary and secretary. Plaintiff alleges that she is disqualified from either job due to her purported inability to reach. As noted above, Plaintiff's restriction is not as broad as she alleges, but is limited to prolonged overhead work with her right arm, as described in the ALJ's RFC determination.

Defendant asserts that this is a situation where the Court could find the ALJ's omission to constitute "harmless error." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) An argument could be made that judicial efficiency would be best served if this Court compared the ALJ's RFC evaluation with the occupational requirements described in the DOT listings provided by Plaintiff. However, *Allen* is far from a ringing endorsement of applying the "harmless error" standard to a review of agency findings. Furthermore, it is generally improper for a reviewing court to make findings committed to an agency. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 87 L. Ed. 626, 63 S. Ct. 454 (1943). Instead, the Court finds that remand is appropriate on this limited issue in order that the ALJ may make findings as to the specific physical requirements of the work of a secretary "as

generally performed in the national economy."

## V. Conclusion and Summary

In sum, I find that the ALJ erred at step four of the sequential analysis when he failed to specify the physical requirements of the past relevant work that he found Plaintiff could perform. The ALJ correctly determined Plaintiff's RFC, but did not make specific findings that Plaintiff's RFC matched the specific requirements of her past relevant work. Plaintiff's other allegations are determined to be not well founded, for the reasons set forth above.

Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct further proceedings, which shall include:

1) At step four of the sequential analysis, the Commissioner should specify the physical requirements of the past relevant work that Plaintiff is found capable of performing. The Commissioner should compare those requirements with Plaintiff's RFC and make specific findings as to whether Plaintiff is or is not capable of performing the job requirements of secretary "as generally performed in the national economy."

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket # 16] is **GRANTED IN PART,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

_____
**W. DANIEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE**